**In re the Marriage of Julianne E. TAMASY, Appellant/Respondent,**

v.

**Peter S. KOVACS, Appellee/Petitioner.**

**No. 49A05–0910–CV–563.**

Court of Appeals of Indiana.

June 28, 2010.

Michael Cheerva, Avery & Cheerva, LLP, Indianapolis, IN, Attorney for Appellant.

Mary F. Schmid, Stewart & Irwin, P.C., Indianapolis, IN, Attorney for Appellee.

## OPINION

BRADFORD, Judge.

Appellant/Respondent Julianne E. Tamasy ("Mother") appeals the trial court's order granting physical custody of the parties' children to Appellee/Petitioner Peter S. Kovacs ("Father"). Mother raises several issues on appeal, which we restate as follows:

I. Whether the trial court abused its discretion in denying Mother's request to transfer the custody proceedings to Massachusetts;

II. Whether the trial court abused its discretion in excluding certain testimony at trial;

III. Whether the trial court abused its discretion in modifying the previous custody order; and

IV. Whether the trial court abused its discretion in issuing the July 23, 2009 order regarding Mother's emergency motion to compel parenting time.

Concluding that the trial court did not abuse its discretion in any regard, we affirm.

## FACTS AND PROCEDURAL HISTORY

Mother and Father are the parents of three sons: A.K., who was born on December 22, 1994; J.K., who was born on October 23, 1996; and N.K., who was born on October 30, 1998. Mother and Father were divorced on August 14, 2000. Pursuant to the parties' divorce decree, Mother and Father shared joint legal custody of the boys, and Mother had primary physical custody. Mother moved with the boys to Shrewsbury, Massachusetts shortly after the parties' divorce was finalized.

Since that time, Mother and Father have shared joint legal custody, Mother has had primary physical custody, and Father has exercised parenting time with the children, including a six-week visit to Father's home in Indianapolis every summer. The parties have, however, litigated a variety of custody, parenting time, and child support issues in the same Marion County Superior Court ("the trial court") which entered the parties' divorce decree in 2000.

On May 7, 2008, Father filed a petition seeking a modification of the prior custody order in the trial court. Six days later, Mother filed custody proceedings in a Massachusetts court. Mother subsequently requested that the trial court decline jurisdiction over Father's custody petition because she claimed that the Massachusetts court would be a more convenient forum. On June 10, 2008, the trial court denied Mother's request and issued an order finding that Indiana was the most convenient forum to hear the custody issue.[1]

The trial court set the matter for a hearing on August 7, 2008. Mother filed numerous motions for continuances of the hearing on the matter. Eventually, the trial court conducted a series of hearings in the instant matter on November 15, 2008, March 27, 2009; May 19, 2009; and May 21, 2009. During this ongoing series of hearings, the trial court considered the testimony of numerous witnesses and many exhibits, including a custody evaluation that was performed by Dr. John Ehrmann. Dr. Ehrmann determined that "[g]iven all of the concerns addressed and reviewed in this entire parenting time evaluation, the suggestion/recommendation of this psychologist/evaluator is that the boys' overall best interests would be served by supporting their relocation to Indianapolis." Appellant's App. p. 655. On June 5, 2009, the trial court issued its order modifying the prior custody order and granted Father primary physical custody of the parties' three children. Mother now appeals.

## DISCUSSION AND DECISION[2]

### I. Whether the Trial Court Abused Its Discretion in Denying Mother's Request to Transfer the Custody Proceedings to Massachusetts

Mother first contends that the trial court abused its discretion in denying her request to transfer the instant custody proceedings to Massachusetts.

#### A. Standard of Review

Where, as here, the issue at hand deals with an interstate custody determination, the Uniform Child Custody Jurisdiction Act ("UCCJA"), which is codified at Indiana Code Chapter 31–21–5–1 *et seq.* (2007) governs. One purpose of the UCCJA is to prevent parents from seeking custody in different jurisdictions in an attempt to obtain a favorable result. *In re Marriage of Kenda and Pleskovic,* 873 N.E.2d 729, 736 (Ind.Ct.App.2007), *trans. denied; Christensen v. Christensen,* 752

---

1. Mother filed a request that this order be certified for Interlocutory Appeal, which was subsequently denied.

2. We note that Mother's brief at times fails to provide pinpoint citations. We respectfully remind Mother's counsel of Appellate Rule 22 of the Indiana Rules of Appellate Procedure, which states that citations are to follow the format put forth in a "current edition of a Uniform System of Citation (Bluebook)." The Bluebook provides that when referring to specific material within a source, a citation should include both the page on which the source begins and the page on which the specific material appears. The Bluebook: A Uniform System of Citation Rule 3.2(a), at 59 (Columbia Law Review Ass'n et al. eds., 18th ed. 2005); *see also Webb v. Schleutker,* 891 N.E.2d 1144, 1155 n. 7 (Ind.Ct.App.2008).

N.E.2d 179, 184 (Ind.Ct.App.2001). "The UCCJA has provisions for the determination of jurisdiction." *In re Kenda,* 873 N.E.2d at 735. Under the UCCJA, an Indiana court has an affirmative duty to question its jurisdiction when it becomes aware of an interstate dimension in a child custody dispute. *Christensen,* 752 N.E.2d at 181–82. The trial court must first determine whether it has jurisdiction, and, if it does, whether to exercise that jurisdiction. *Id.* at 182. In determining whether a trial court has improperly exercised jurisdiction under the UCCJA, we apply an abuse of discretion standard. *Id.* An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. *Id.*

Where, as here, the trial court issues special findings and conclusions thereon pursuant to Indiana Trial Rule 52, "we apply the following two-tiered standard of review: whether the evidence supports the findings and whether the findings support the judgment." *Staresnick v. Staresnick,* 830 N.E.2d 127, 131 (Ind.Ct.App.2005).

> The trial court's findings and conclusions will be set aside only if they are clearly erroneous, that is, if the record contains no facts or inferences supporting them. A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. We neither reweigh the evidence nor assess the credibility of witnesses, but consider only the evidence most favorable to the judgment. We review conclusions of law *de novo.*

*Id.* (citations omitted).

### B. Analysis

■ Initially, we observe that Mother first argues that the trial court abused its discretion in finding that she waived her challenge to the jurisdiction of the trial court in the instant custody matter because she had actively availed herself of the trial court's jurisdiction in related matters over the previous eight years. In support, Mother correctly asserts that the trial court could find the Massachusetts court to be a more convenient forum for the instant custody matter and decline jurisdiction over said matter even if she did waive her objection to the trial court's continuing jurisdiction. *See Stewart v. Vulliet,* 888 N.E.2d 761, 767 (Ind.2008) (providing that even if a party has waived the right to claim forum inconvenience, a trial court has the discretion to decline to exercise jurisdiction on the grounds of forum inconvenience). However, upon review of the record, we conclude that the trial court did not rely on Mother's alleged waiver, but rather on the evidence presented by the parties relating to the relevant factors in determining that Massachusetts was not a more convenient forum to litigate the instant child custody issues. Therefore, we will review Mother's claims on the merit s, rather than on the basis of waiver.

■ It is undisputed that the trial court had jurisdiction to make the initial child custody determination because Indiana was the home state of the children at the time that the parties' dissolution petition was filed. *See* Ind.Code § 31–21–5–1.

> The fundamental principle underlying the UCCJA is that once a court with a jurisdictional basis exercises jurisdiction over a "custody" issue, that court retains exclusive jurisdiction over all custody matters so long as a "significant connection" remains between the controversy and the state, and that court alone has discretion to decide whether it will defer jurisdiction to the court of another state upon the basis that the other court is a

more convenient forum to litigate the issues. A "significant connection" remains under the scheme as long as one parent continues to reside in the state rendering the initial determination.

*In re Custody of A.N.W.*, 798 N.E.2d 556, 561–62 (Ind.Ct.App.2003) (quoting *Matter of E.H.*, 612 N.E.2d 174, 185 (Ind.Ct.App. 1993), *opinion adopted,* 624 N.E.2d 471 (Ind.1993)), *trans. denied.*

Here, the record establishes that Father has continued to live in Indiana at all times since the initial custody determination. Thus, we conclude that a "significant connection" remains between the instant custody matter and the trial court. In light of our conclusion that a "significant connection" remains between the trial court and the instant custody matter, we further conclude that the determination as to whether Massachusetts would be a more convenient forum to decide the instant custody matter was solely within the trial court's discretion. *See id.* (providing that where a significant connection remains, the court alone has the discretion to decide whether it will defer jurisdiction to another court on the basis that the other court is a more convenient forum to litigate the issues).

■ On appeal, Mother claims that the trial court abused its discretion by "wholly fail[ing] to properly analyze the factors of the inconvenient forum statute." Appellant's Br. p. 15. The "inconvenient forum statute," codified at Indiana Code section 31–21–5–8(b) provides as follows:

> Before determining whether an Indiana court is an inconvenient forum, the Indiana court shall consider whether it is appropriate for a court of another state to exercise jurisdiction. For this purpose, the Indiana court shall allow the parties to submit information and

shall consider the relevant factors, including the following:

> (1) Whether domestic violence has occurred and is likely to continue in the future and which state is best able to protect the parties and the child.[3]
>
> (2) The length of time the child has resided outside Indiana.
>
> (3) The distance between the Indiana court and the court in the state that would assume jurisdiction.
>
> (4) The relative financial circumstances of the parties.
>
> (5) An agreement of the parties as to which state should assume jurisdiction.
>
> (6) The nature and location of the evidence required to resolve the pending litigation, including the child's testimony.
>
> (7) The ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence.
>
> (8) The familiarity of the court of each state with the facts and issues in the pending litigation.

This court has previously concluded that the above-stated list is not exclusive, and that courts may consider all relevant factors, including factors not listed in Indiana Code section 31–21–5–8(b). *See Palm v. Palm,* 690 N.E.2d 364, 367, 369 (Ind.Ct. App.1998) (discussing the nonexclusive statutory list of factors for determining which forum would be a more convenient forum to litigate the issues), *trans. denied.*

Mother argues that the trial court abused its discretion by failing to adequately consider the factors set forth in Indiana Code section 31–21–5–8(b). Mother, however, points to no evidence that she alleges should have been considered by the trial court but was not. Rather, Mother

---

**3.** It is undisputed that neither party has ever engaged in any domestic violence. This fac-

tor is therefore inapplicable to the case at hand.

merely challenges the trial court's determination that Massachusetts was not a more convenient forum to litigate the instant custody issues in light of the evidence submitted by Mother. Mother argues, and the trial court found, that the children's primary residence had been with Mother in Massachusetts since August of 2000, many of the children's medical records were kept in Massachusetts, and many of the witnesses that she intended to call resided in Massachusetts. Mother does not challenge the trial court's findings in this regard, but argues that these findings support a determination that Massachusetts could be a convenient forum to litigate the instant custody issues. *See* Ind. Code § 31–21–5–8(b)(2); –8(b)(6). While these findings might have supported a determination that Massachusetts could have been a convenient forum to litigate the instant custody issues, these findings alone are not sufficient to invalidate the decision of the trial court. *See Westenberger v. Westenberger*, 813 N.E.2d 343, 349 (Ind.Ct. App.2004) (providing that the existence of some facts that might have supported a contrary decision regarding jurisdiction were not enough to invalidate the trial court's decision regarding the most convenient forum for a child custody dispute), *trans. denied.*

Moreover, the trial court made additional findings that support its determination that it should retain jurisdiction because it was the more convenient jurisdiction to hear the instant dispute. The trial court found that substantial travel and attendant expenses would be incurred by one of the parties regardless of which court exercised jurisdiction over the dispute, and that Mother's income was approximately three times that of Father.[4] Appellant's App. p.

29. However, in an effort to limit costs and expenses, the trial court stated that it would allow witnesses to testify in person or through deposition. The trial court also noted that Father's potential witnesses as well as the parties' parenting coordinator who would likely be called to testify resided in Indiana. In addition, the trial court acknowledged that even if the Massachusetts court exercised jurisdiction over the custody issues, pursuant to Mass. Gen. Las 209(D), Section 6–611(J), it could not exercise jurisdiction over the related support issues, including Mother's request to claim all three children on her tax returns. The trial court also found that it was intimately familiar with the facts and issues relating to the parties and their children. The trial court also noted that it was prepared to decide the issue expeditiously, as a hearing date had already been set.

Again, in order to find an abuse of discretion, we must conclude that the trial court's determination was clearly against the logic and effect of the facts and circumstances before it, or that it misinterpreted the law. *See Westenberger*, 813 N.E.2d at 349. In light of the overwhelming evidence that the trial court is intimately familiar with issues presented by the parties, its willingness to work with the parties to contain costs, the split location of the parties, the children, and the various potential witnesses, the inability of the Massachusetts court to exercise jurisdiction on all related issues, and the trial court's willingness to decide the instant custody issues expeditiously, we are unable to say that the trial court abused its discretion in retaining jurisdiction of the instant matter after determining that

---

4. Although Mother claims that the trial court did not make any specific findings regarding the parties' financial situations, the trial court specifically found that Mother's income was approximately three times that of Father.

Indiana was the more convenient forum to decide the instant custody dispute.[5]

Further, to the extent that Mother argues that the trial court abused its discretion by finding that her act of initiating custody proceedings in Massachusetts approximately eleven days after learning that Father had initiated custody proceedings in the trial court appeared to be an act of forum shopping, we disagree. The record establishes that the trial court had considered at least eight motions or agreed entries pertaining to the custody or support of the parties' children since it made the initial custody determination. Mother continued to actively engage the trial court in all matters regarding the custody or support of the children despite the fact that she moved with the children to Massachusetts in August of 2000. Mother did not challenge the trial court's jurisdiction over these ongoing matters at any time prior to the filing of the instant custody modification request by Father. Moreover, Mother did not file her competing custody proceedings in Massachusetts until after learning that Father was seeking a modification of the prior custody order from the trial court. In light of these facts, we conclude that the trial court's determination that Mother's act of initiating custody proceedings in Massachusetts appeared to have been an act of forum shopping was supported by the record and the inferences that can be drawn therefrom. Thus, we further conclude that the trial court did not abuse its discretion in this regard.

## II. Whether the Trial Court Abused Its Discretion in Excluding Certain Testimony from the Custody Proceedings

Mother next contends that the trial court abused its discretion in excluding certain evidence from the custody proceedings.

### A. Standard of Review

■ "The question of whether particular witnesses or exhibits should be excluded from evidence because they have not been submitted in a list of witnesses and exhibits is committed to the discretion of the trial court." *Daub v. Daub*, 629 N.E.2d 873, 875 (Ind.Ct.App.1994), *trans. denied.* Under our standard of review, we will not reverse a discretionary decision of a trial court unless a manifest abuse of discretion is shown. *Id.* Again, an abuse of discretion may occur if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the trial court has misinterpreted the law. *McCullough v. Archbold Ladder Co.*, 605 N.E.2d 175, 180 (Ind.1993). "In discovery rulings, the law affords the trial judge latitude; we will not reverse on appeal unless we are persuaded that the trial court's decision is clearly against the logic and effect of the circumstances before the court." *Daub*, 629 N.E.2d at 875.

### B. Analysis

■ Mother claims that the trial court abused its discretion by excluding certain testimony from trial. Specifically, Mother argues that the trial court abused its discretion by excluding the rebuttal testimony of Dr. Jon Gould. Mother argues that the trial court abused its discretion by excluding this testimony despite the fact that she failed to include Dr. Gould's name on any witness list as was required by the trial court's pretrial case management order. In support, Mother cites to *Whisman v.*

5. To the extent that Mother challenges the specific findings and conclusions of the trial court in this regard, we conclude that the specific findings and conclusions are sufficiently supported by the record and the inferences that can be drawn therefrom.

*Fawcett,* 470 N.E.2d 73, 76 (Ind.1984), *overruled on other grounds,* for the proposition that pretrial orders are not to be rigidly and pointlessly adhered to at trial. However, Mother does not explain how her failure to include Dr. Gould's name on either her pretrial or final witness list translates into an abuse of discretion by the trial court merely because the trial court denied Mother's request that the trial court refrain from enforcing its pretrial order.

The nondisclosure of a rebuttal witness is excused only when that witness was unknown and unanticipated. *McCullough,* 605 N.E.2d at 179. Known and anticipated witnesses, even if presented in rebuttal, must be identified pursuant to a court order, such as a pre-trial order, or to a proper discovery request. *Id.* "A 'known' witness refers to knowledge of the existence of that witness." *Id.* "An 'anticipated' witness is one which a party or her counsel anticipates the need for at trial." *Id.* One purpose of requiring the parties to comply with the trial court's pretrial order is to provide parties with information essential to the litigation by eliminating surprise. *Id.* (providing that requiring disclosure in compliance with a pretrial court fulfills the objectives of Indiana's discovery rules which aim to provide the parties with all relevant information by eliminating surprise).

Here, it is undisputed that Mother knew about and anticipated calling Dr. Gould as a rebuttal witness. However, Mother did not include Dr. Gould's name on either her pretrial or final witness list. Mother did not avail herself of the opportunity to amend either of these lists to include Dr. Gould. Mother did not disclose Dr. Gould's name or the likelihood that he would be called as a rebuttal witness at trial in any discovery document. We note that Mother eventually disclosed Dr.

Gould's name to Father, but it is unclear when this disclosure was made and whether Mother disclosed the fact that she intended to call Dr. Gould as a rebuttal witness at trial. However, even considering Mother's eventual disclosure to Father, we cannot say that the trial court abused its discretion in excluding Dr. Gould's testimony in light Mother's failure to list Dr. Gould, a known and anticipated witness, in either her pretrial or final witness list as was required by the trial court's pretrial order. Thus, we conclude that the trial court did not abuse its discretion in this regard.

Mother additionally claims that the trial court abused its discretion in refusing to allow "other" witnesses to testify by telephone. Appellant's Br. p. 18. In support, Mother cites to Indiana Code section 31–21–4–6 (2007), which provides as follows: "An Indiana court *may* permit a person residing in another state to be deposed or to testify by: (1) telephone; (2) audiovisual means; or (3) other electronic means; before a designated court or another location in that state." (emphasis added). Indiana Code section 31–21–4–6 does not require a trial court to allow a person residing in another state to testify by telephone, but rather permits a trial court to allow such testimony, and Mother presents no cogent argument as to how the trial court's denial of telephonic testimony amounted to an abuse of discretion. In addition, it appears that the trial court would have allowed these "other" witnesses to testify via deposition had Mother chosen to present their testimony in this way, but Mother chose not to avail herself of this opportunity.

Moreover, Mother has failed to name all of these "other" witnesses or provide any information about what these witnesses would have testified to in relation to the instant custody proceedings. Mother's

failure to provide such information results in waiver of her challenge to the exclusion of these "other" witnesses on appeal. *Cf. State v. Bryant*, 167 Ind.App. 360, 364, 338 N.E.2d 690, 693 (1975) (providing that the parties' contention that the trial court erroneously excluded the testimony of certain witnesses was not preserved for review on appeal where there was no indication in the appellate record as to what the testimony of such witnesses would have been). Thus, we conclude that the trial court did not abuse its discretion in this regard.

### III. Whether the Trial Court Abused Its Discretion in Modifying the Previous Custody Order

Mother next contends that the trial court abused its discretion in modifying the court's previous child custody order.

#### A. Standard of Review

On appeal, we review custody modifications for an abuse of discretion with a " 'preference for granting latitude and deference to our trial judges in family law matters.' " *Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind.2002) (quoting *In re Marriage of Richardson*, 622 N.E.2d 178, 178 (Ind.1993)). When reviewing the trial court's decision, we will not reweigh the evidence, judge witness credibility, or substitute our judgment for that of the trial court. *Pawlik v. Pawlik*, 823 N.E.2d 328, 329 (Ind.Ct.App.2005), *trans. denied*. "We set aside judgments only when they are clearly erroneous, and will not substitute our own judgment if any evidence or legitimate inferences support the trial court's judgment." *Kirk*, 770 N.E.2d at 307. The Indiana Supreme Court explained the reason for this deference in *Kirk*:

> While we are not able to say the trial judge could not have found otherwise than he did upon the evidence introduced below, this Court as a court of review has heretofore held by a long line

of decisions that we are in a poor position to look at a cold transcript of the record, and conclude that the trial judge, who saw the witnesses, observed their demeanor, and scrutinized their testimony as it came from the witness stand, did not properly understand the significance of the evidence, or that he should have found its preponderance or the inferences therefrom to be different from what he did.

*Id.* (quoting *Brickley v. Brickley*, 247 Ind. 201, 204, 210 N.E.2d 850, 852 (1965)). "Therefore, '[o]n appeal it is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by appellant before there is a basis for reversal.' " *Id.* (quoting *Brickley*, 247 Ind. at 204, 210 N.E.2d at 852).

#### B. Analysis

Mother claims that the trial court abused its discretion in granting Father's request for a modification of the trial court's previous custody order because the court's findings do not support the conclusion that a modification of the existing custody order was warranted. More specifically, Mother challenges various findings, including the court's findings that two of the children wish to live with Father, that Mother has interfered with Father's relationship with the children, that Mother is often tired and unavailable for the children when she returns home from work, that Mother seems to expect the children's school to handle all academic matters, and that Mother does not consult with Father prior to making non-routine decisions regarding the children. In addition, Mother argues that even if these findings are supported by the evidence, these findings reveal nothing more than isolated acts of misconduct which do not

support a modification of the prior custody order.

Under Indiana Code section 31–17–2–20 (2007), a court may not modify a child custody order unless modification is in the child's best interests and there has been a substantial change in one of several factors that a court may consider in initially determining custody as outlined in Indiana Code 31–17–2–8 (2007). These factors include:

(1) The age and sex of the child.

(2) The wishes of the child's parent or parents.

(3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.

(4) The interaction and interrelationship of the child with:

 (A) the child's parent or parents,

 (B) the child's sibling; and

 (C) any other person who may significantly affect the child's best interests.

(5) The child's adjustment to the child's:

 (A) home;

 (B) school; and

 (C) community.

(6) The mental and physical health of all individuals involved.

(7) Evidence of a part of domestic or family violence by either parent.

(8) Evidence that the child has been cared for by a de facto custodian.

## 1. Findings

 Mother challenges the trial court's finding that the two oldest boys, A.K. and J.K., had expressed an interest in living with Father. With respect to the children's wishes, the trial court found as follows:

The court has considered the wishes of the children and listened to the parties and others as they express the ambivalence that the children feel as this proceeding continues to drag on without resolution. Again, the children's wishes are but a part of the court's consideration in a change of custody matter. [A.K.] has expressed an interest in living with Father now for three years. [J.K.] has echoed his brother's feelings recently. [N.K.] appears to be comfortable with Mother in Massachusetts although he enjoys spending time with Father as well.

Appellant's App. p. 40.

Upon review, we conclude that this finding is supported by substantial evidence in the record. The record establishes that A.K. has expressed the strongest desire to live with Father, that J.K. has echoed A.K.'s desire to live with Father, and that N.K. has indicated that he was comfortable with the current arrangement but that he enjoys spending time with Father. The record further establishes that A.K. and J.K. have indicated that they prefer to speak to Father about their feelings because they are more comfortable with him. N.K. indicated that he does not really talk to anyone about his feelings. In addition, all three boys stated that they wished that their parents lived closer to one another so that they could spend more time with both of them. In light of this evidence before the trial court, we conclude that the trial court's finding regarding the children's wishes is supported by evidence contained in the record, and thus is not clearly erroneous.

 Mother also challenges the trial court's finding that she interfered with the boys' relationship with Father. With respect to Mother's interference with the boys' relationship with Father, the trial court found as follows:

33. Two of the most disturbing areas of this matter involve Mother's clear interference with the parent-child relationship of the boys with their father. These issues relate to repeated tape-recording of conversations between the children and Father as well as Mother's refusal to have internet service for the children over a prolonged period of time.

34. Father communicates with the boys via the internet. For nearly a year between April 2007 and April 2008, the children did not have access to the internet in the house in Shrewsbury. Mother's claim that she couldn't get it together or that she would have to stay home from work is simply not credible in the face of all the testimony and exhibits. Mother has spent thousands of dollars on babysitters and nannies for the children, makes considerable money in her employment, has access to a work computer in her home and has family and others around who could have assisted for a repair or systems person to make the necessary arrangements. Mother simply did not want the children communicating with [F]ather unless she was in control of the type, length and nature of the communication.

35. Mother recorded telephone conversations between the boys and Father, as well as between others. Petitioner's Exhibit 6 consists of four cassette tapes with recordings on both sides of each tape. These recordings are of conversations from approximately March, 2008 to the summer of the same year. Mother did not inform Father or her children that she was taping their conversations. The tapes were produced to Father in the course of discovery. The Court admitted into evidence excerpts of Exhibit 6, three of which were played in open court. Excerpts of these recordings were also supplied to Dr. Ehrmann by Father and Mother during the custody evaluation. Mother's statement that she was required by her employer to tape telephone conversations in her home is unbelievable. Even if it were true, Mother could have disclosed this to all of her sons and to Father and furthermore could have permitted cell phone contact outside of [t]he home that would not have been subject to the "requirement" of tape-recording.

36. One of the excerpts was of a conversation between Mother (who was at work) and [J.K.] from sometime in May, 2008. Dr. Ehrmann also reviewed this particular recording. Dr. Ehrmann characterized Mother's treatment of [J.K.] during this conversation as relentless, conditional, heavy handed and guilt producing, ultimately opining that Mother's degree of self-focus and insensitivity to [J.K.]'s feelings were "remarkable". (Pet.Ex. 23, pp. 32, 41; Ehrmann Direct Exam.). This excerpt was played in open court during Dr. Ehrmann's testimony. It was obvious from the recording that [J.K.] was extremely upset, and on the verge of crying. It is clear that Mother is in the need of individual counseling to develop insight into how her manipulative behavior is impacting her children.

37. Another recording played in open court starts with a conversation between [A.K.] and Father from sometime in March, 2008. During his conversation with his Father, [A.K.] describes, in hushed tones, his belief that the nanny, Judy Guggolz ("Guggolz"), was monitoring the conversation. [A.K.] also described to his Father that Mother was horribly angry at the children and had placed a number of sanctions on them. During the course of their conversation, Mother telephones and [A.K.] "clicked" over to the Mother's line while Father waited for [A.K.] to return on the other

line. After speaking to both [A.K.] and [J.K.], Mother then speaks with Guggolz while Father continued to hold. Mother asked Guggolz to report what the boys had been telling Father during their conversation. Mother then told Guggolz to continue the conversation in hopes that Father would eventually hang up. Later on in the recording, sounds could be heard indicating that Father had indeed hung up, which is acknowledged by both Mother and Guggolz. Mother then instructed Guggolz to "hide the phone" so that the children either could not call their Father back or that they would have to use another telephone in the house that could be more easily monitored. This behavior on the part of Mother is appalling and is clearly a part of the parental interference in the relationship between Father and the boys. 38. Another recording played in open court was a conversation between Mother and Rosalie Tamasy, her mother and the children's maternal grandmother. In that conversation, Mother described an event sometime shortly after the instant Petition was filed where she had a conversation with both [J.K.] and [N.K.]. In the conversation she describes her efforts to convince [J.K.] that Father favors [A.K.] over him. In describing this conversation to Rosalie Tamasy, Mother recites telling [J.K.] that he did not receive the same favorable birthday gifts from Father as [A.K.] had and she used this as examples to [J.K.] of how his father favors his older brother. Mother then confirms that after telling [J.K.] this he was "very angry" denied that his Father favored any one of the three boys, and that [J.K.] called her "evil" for suggesting the same. During the recorded conversation, Mother also repeated that [J.K.] told her that he wanted to live with Father because it was a "normal family" with both a moth-

er (i.e. step-mother) and Father. [A.K.] stated to Ms. Dunn during the Massachusetts Home Study that Mother's attempts to convince his brothers that Father favors [A.K.] over them makes them "feel bad". (Pet.Ex.23, First Dunn Home Study, p. 25).

Appellant's App. pp. 41–43.

Upon review, we conclude that these findings are also supported by substantial evidence in the record. The record establishes that Mother was aware that the boys communicated and interacted with Father via the internet but that she kept the boys from having access to the internet in her home for a period of nearly a year. Moreover, the record includes substantial evidence that for an uncertain period of time, Mother recorded the boys' telephone conversations with Father. Other recordings clearly demonstrated Mother's intent to interfere with the boys' relationship with Father. Mother monitored phone calls, instructed the boys' nanny to hide the telephone so the boys could not call Father or so their conversations could be more easily monitored, and attempted to manipulate the boys' feelings about Father by trying to convince them that Father favored A.K. Thus, we conclude that the trial court's findings are not clearly erroneous. Mother effectively invites us to reweigh the evidence, which we will not do. *See Pawlik*, 823 N.E.2d at 329 (providing that this court will not reweigh the evidence when reviewing a trial court's custody determination).

Mother next challenges the trial court's finding that she is tired and unavailable for the children when she returns home from work. With respect to Mother's availability to spend time with the children after work, the trial court found as follows:

Mother works at a bank where she manages foreign exchange funds. Since August 2007, Mother has retained a "nanny", Judy Guggolz, to care for the children when she is at work. Guggolz observed that Mother usually leaves for work at 8:15 am Mondays through Thursdays, and generally works from home on Fridays. Guggolz reports that Mother usually returns home from work at around 8:00 pm and that dinner is usually served between 8:30 and 9:00 pm. Mother is tired and generally unavailable when she returns home in the evenings. (Pet.Ex.23, p. 9). She also states that [A.K.] and [J.K.] have reached the point that they prefer that she [Mother] not be around.

Appellant's App. 44.

Upon review, we conclude that this finding is supported by the evidence contained in the record. Both the children and their nanny, Guggolz, indicated that Mother is usually too tired to interact with the boys once she returns home from work around 8:00 p.m. and that A.K. and J.K. are to the point where they prefer that Mother not be around. Guggolz further indicated that Mother is largely focused on work and the instant custody proceedings, and little else. In light of this evidence, we conclude that this finding is not clearly erroneous. Again, Mother effectively invites us to reweigh the evidence, which we will not do. See Pawlik, 823 N.E.2d at 329 (providing that this court will not reweigh the evidence when reviewing a trial court's custody determination).

▆▆ Mother also challenges the trial court's finding that she was unable or unwilling to assist the children academically. With respect to Mother's ability or willingness to assist the children academically, the trial court found as follows:

The parties focused a great deal of attention on the grades and report cards

of the children. The Court does note that there appear to be continuing issues with the completion of homework. In addition, while [A.K.] has a 504 plan and [N.K.] has an IEP, [M]other seems to be expecting that the school system will take care of everything that they need academically. The boys are performing adequately but do not appear to be performing at the level that they are capable of managing with the nanny supervising homework or Mother but much later in the evening. The boys currently attend public school in Shrewsbury, Massachusetts. [A.K.] will be completing 8th grade and attending High School (9th grade) in the fall, 2009. [J.K.] is completing the 6th grade and [N.K.] will be completing the 4th grade. Their current school years will conclude on June 19, 2009.

Appellant's App. p. 44.

Again, upon review we conclude that this finding is supported by the evidence in the record. The record establishes that the issues surrounding the completion of homework were ongoing, and that Mother was not available before 8:00 p.m. to assist the boys. The record also establishes that the boys were not achieving their full potential academically. Although Mother presented her own testimony to the contrary, Mother's argument is nothing more than an invitation for this court to review the evidence, which again, we will not do. See Pawlik, 823 N.E.2d at 329 (providing that this court will not reweigh the evidence when reviewing a trial court's custody determination).

▆▆ Finally, Mother challenges the trial court's finding that she excluded Father from meaningful participation in non-routine decisions regarding the children. With respect to Mother's exclusion of Father from non-routine decisions involving

the children, the trial court found as follows:

> There is evidence that Father is excluded from meaningful participation in nonroutine decisions involving the children. For example, Mother did not consult with Father prior to making a decision to send [A.K.] to St. Johns High School in Shrewsbury, Massachusetts, a private high school. (Pet.Ex.9). Also, Mother took [A.K.] for a comprehensive allergy examination in May, 2008. (Pet.Ex. 18). Father was not informed of the examination, nor of the results which were issued on May 21, 2008.

Appellant's App. p. 45.

Again, upon review we conclude that this finding is supported by the evidence in the record. The record contains substantial evidence supporting the trial court's finding that Mother often excluded Father from decisions regarding the children's lives, including Mother's admission that she did so in what she considered to be isolated situations. Moreover, Dr. Ehrmann concluded in his custody evaluation that "[Mother] doesn't seem to understand that [Father]'s input, as a father, is also important. She does not seem interested in his opinions and does not pursue them before moving forward with decisions." Appellant's App. p. 629. To the extent that Mother requests this court to conclude otherwise, Mother is effectively asking this court to reweigh the evidence, which again, we will not do. *See Pawlik,* 823 N.E.2d at 329 (providing that this court will not reweigh the evidence when reviewing a trial court's custody determination).

## 2. Custody Modification Warranted

■ Mother next claims that even if the challenged findings are supported by the evidence, the trial court's findings reveal nothing more than isolated acts of misconduct which do not support the instant custody modification. In support, Mother correctly asserts that the noncustodial parent must show something more than isolated acts of misconduct by the custodial parent to warrant a modification of child custody. *See Wallin v. Wallin,* 668 N.E.2d 259, 261 (Ind.Ct.App.1996). Specifically, Mother argues that in finding that a modification of the previous custody order was warranted, the trial court based its decision on the following isolated events: recording phone conversations, excluding Father from the decision making process, and speaking poorly about Father in front of the children. However, the record indicates that the trial court based its decision on the overall testimony and exhibits provided by the parties in conjunction with Dr. Ehrmann's comprehensive custody report.

In making its determination that a change of custody was warranted, the trial court cited to the clear indication and desire [of both A.K. and J.K.] "to spend more time and live with" Father. Appellant's App. p. 47. The trial court properly considered this factor in modifying the prior custody order. *See* Ind.Code § 31–17–2–8(3) (providing that the court shall consider the wishes of the child). The trial court also found that A.K. and J.K. preferred that Mother not be around, and pointed to Dr. Ehrmann's observation that there was "a risk that the children would become more oppositional and defiant towards Mother should the status quo prevail." Appellant's App. p. 47.

The trial court also cited to Dr. Ehrmann's recommendation that, in light of the substantial information considered during the custody evaluation, the boys' overall best interests would be served by supporting a relocation of the boys to Indianapolis and a change in primary physical custody to Father. Appellant's App. p. 655. In coming to this conclusion, Dr. Ehrmann

considered home studies from both Mother's and Father's homes, as well as extensive interviews with the families and individuals familiar with both parties.

The trial court also cited to Mother's failure to include Father in various non-routine decisions regarding the children and her ongoing attempts to interfere with the children's relationship with Father. However, despite Mother's claims to the contrary, the record indicates that these actions were not merely isolated events but rather were ongoing actions by Mother.

When considering all factors as a whole, including the conclusion in Dr. Ehrmann's custody evaluation that it was in the boys' best interest to relocate to Indianapolis and reside with Father, we conclude that the evidence is sufficient to establish that modification is in the best interests of the children and that a substantial change has taken place warranting modification. *See Walker v. Nelson,* 911 N.E.2d 124, 129 (Ind.Ct.App.2009) (concluding that although no single factor warranted a change of custody, consideration of all the factors, including a report by the Domestic Relations Counseling Bureau that a change of custody was in the child's best interest was sufficient to establish that modification was in the child's best interest and that a substantial change of the circumstances had occurred). Therefore, we conclude that the trial court did not abuse its discretion in this regard.

**IV. Whether the Trial Court Abused Its Discretion in Issuing the July 23, 2009 Order Regarding Mother's Emergency Motion to Compel Parenting Time**

Mother next contends that the trial court abused its discretion in issuing the July 23, 2009 order regarding her emergency motion to compel parenting time.

## A. Standard of Review

■ When reviewing a trial court's determination of a parenting time issues, we will grant latitude and deference to our trial courts, reversing only when the trial court abuses its discretion. *Gomez v. Gomez,* 887 N.E.2d 977, 983 (Ind.Ct.App. 2008). No abuse of discretion occurs if there is a rational basis supporting the trial court's determination. *Id.* " 'Therefore, on appeal it is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by appellant before there is a basis for reversal.' " *Id.* (quoting *Duncan v. Duncan,* 843 N.E.2d 966, 969 (Ind.Ct.App.2006)). We will not reweigh the evidence or judge the credibility of the witnesses. *Id.* In all parenting time issues, courts are required to give foremost consideration to the best interest of the child. *Id.*

## B. Analysis

■■ On July 22, 2009, Mother filed an emergency motion to compel parenting time. The next day, the trial court issued an order granting Mother's motion. The trial court's order stated that Father shall permit Mother to exercise parenting time with the parties' minor children on July 24, 2009 through July 26, 2009, in Indianapolis. Mother claims that the trial court abused its discretion in granting her July 22, 2009 Emergency Petition to Compel Parenting Time with the restriction that such parenting time be exercised by Mother in Indianapolis. Specifically, Mother argues that the trial court abused its discretion in ordering that she exercise said parenting time in Indianapolis rather than in Massachusetts. However, inasmuch as Mother is attacking the trial court's July 23, 2009 parenting time order, we are unable to render effective relief and, as a

result, the issue is moot.[6] *See Francies v. Francies*, 759 N.E.2d 1106, 1110–11 (Ind. Ct.App.2001) (noting that an issue raised on appeal is moot where this court is unable to render effective relief), *trans. denied.*

The judgment of the trial court is affirmed.

RILEY, J., and MATHIAS, J., concur.

---

**6.** To the extent that Mother argues that her challenge to the trial court's July 23, 2009 parenting time order is not moot because she is entitled to a complete weekend of parenting time with the children that is unfettered by the restriction that said parenting time occur in Indianapolis pursuant to Indiana Code section 31–17–4–1 (2009), we observe that while Indiana Code section 31–17–4–1 provides that a noncustodial parent is entitled to parenting time, it does not mandate that said parenting time be exercised in the locale preferred by the noncustodial parent. Therefore, we conclude that the trial court's restriction that Mother's July 24, 2009 through July 26, 2009, parenting time be exercised in Indianapolis does not run afoul of Indiana code section 31–17–4–1. Further, to the extent that Mother argues that her challenge to the trial court's July 23, 2009 parenting time order is not moot because the trial court has ample authority to order that the parenting time denied of Mother be made up, we observe that the record is void of any evidence establishing that Mother was denied or otherwise unable to exercise the parenting time in question.