# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 27 2018, 8:43 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Adam J. Sedia
Hoeppner, Wagner & Evans, LLP
Merrillville, Indiana

ATTORNEY FOR APPELLEE

Cassandra Hine
Law Office of Cassandra Hine, P.C.
San Pierre, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Paternity of J.G.L.: | July 27, 2018 |
| | Court of Appeals Case No. 18A-JP-496 |
| Kenya Roberson, | Appeal from the Starke Circuit Court |
| *Appellant-Respondent,* | |
| v. | The Honorable Kim Hall, Judge |
| | The Honorable Jeanene Calabrese, Magistrate |
| Quentin Lenig, | |
| *Appellee-Petitioner.* | Trial Court Cause No. 75C01-1701-JP-1 |

**Robb, Judge.**

# Case Summary and Issue

Quentin Lenig ("Father") and Kenya Roberson ("Mother") have one child together, J.L. ("Child"). In early 2017, the parties stipulated to Father's paternity and signed an agreement on custody, support, and parenting time in the Starke County Circuit Court ("trial court"). Mother was granted primary physical custody of Child and relocated to California with Child permanently. Mother then filed a Verified Motion to Transfer Jurisdiction to California, under the Uniform Child Custody and Jurisdiction Act ("UCCJA"), and a Verified Motion for UCCJA contact between the trial court and the Superior Court of San Diego County, California ("the California Court"), where Mother now resides. The trial court denied Mother's motions. Mother now appeals, raising only one issue for our review which we restate as whether the trial court erred in denying Mother's motion to transfer jurisdiction to California. Concluding the trial court erred, we vacate the trial court's order and remand with instructions.

# Facts and Procedural History

Child was born on March 10, 2016, and paternity was established on February 8, 2017. The trial court granted Mother temporary physical and legal custody of Child and granted Father temporary supervised parenting time. In so doing, the court noted that Child had been living in California, and that Mother had requested permission for Child to return there, but the court ordered Child remain in Indiana pending final resolution of custody, parenting time, and

support. Shortly thereafter, Father and Mother signed an agreement on custody, support, and parenting time, which the trial court adopted as its order on March 20, 2017. The order granted Mother primary physical custody of Child, and she was permitted to relocate to California permanently. The order also specified Father's parenting time schedule and addressed the payment of travel expenses.

[3] In August 2017, Father moved for a rule to show cause, arguing Mother was wrongfully interfering with his parenting time. Two months later, Mother requested supervised parenting time for Father, alleging Father had become violent, threatened her, and was using illegal drugs. Following a hearing, the trial court denied both parties' requests and entered an order providing additional parenting time for Father and stating that "All orders not modified by this order remain in full force and effect." Appendix of Appellant, Volume II at 21.

[4] Mother retained new counsel and requested the trial court transfer venue to the California Court pursuant to the UCCJA. Mother attached an exhibit titled "Restraining Order After Hearing (Order of Protection)" ("California Restraining Order"). App. of Appellant, Vol. II at 25-28; 30-39. The California Restraining Order provided that the California Court held a hearing on January 29, 2018, which Father and Mother attended, and the court ordered Father to stay at least one hundred yards from Mother and Child and restricted Father's contact for three years. The California Restraining Order also incorporated two

attachments: (1) "Child Custody and Visitation Order," *id.* at 37; and (2) "Court[']s Findings and Orders 1/29/18," *id*. at 39.

[5] The Child Custody and Visitation Order ordered "[n]o visitation to . . . Dad," *id*. at 37, while the handwritten Court's Findings and Orders provided:

> (1) Court finds that Father has not been truthful with the court. The Court does not believe Father as Father has lied to the Court about the abusive text messages, threats and his behavior. Father has sought to minimize his actions and does not understand the extent or significance of his behavior.
>
> (2) Counsel for Mother is to file a request for Order regarding modification of child custody / visitation. Court sets hearing date on custody for March 12, 2018 at 11:15 a.m.
>
> (3) Court exercised child custody [j]urisdiction pursuant to Family Code 3424.
>
> (4) Court finds that Mother's allegations of abuse by Father are substantiated and issues a 3 year restraining order, listing both Mother and [Child] as protected parties. Court will reassess custody and whether it retains emergency jurisdiction [sic] March 12, 2018 FO [sic] hearing.

*Id.* at 39.

[6] The trial court held a hearing on Mother's Motion Verified Motion to Transfer Jurisdiction to California on February 19, 2018. Both Father's and Mother's counsel attended in person, as did Father, and Mother attended by telephone.

Mother rested on the verified statements in her motion. Following arguments from counsel, the trial court made the following ruling on the motion:

> [The Court]: Yeah. You know, here's the deal. I'm not – I'm not losing jurisdiction over this case. From day one (1) the mother has repeatedly attempted to keep [Father] out of this child's life. We – I accepted the agreement and allowed her to remove herself *and* the child – at first I had to order the child to remain *in* Indiana and she could go back to California or wherever she was, by herself, but she chose to stay here and she just keeps doing it, and doing it, and I'm not gonna' do it. I'm not giving up jurisdiction on this case. So, I don't know where that leaves either one of you but I'm not gonna' do it. The [UCCJA] allows this Court to retain it because this is where the decree of paternity was entered. And I'm keeping it. And I'm not giving it away. So, [Mother], if you want this Court to address *any* issues regarding [Child], I suggest that you show up in this courtroom for hearings. Do you have any questions ma'am?
>
> [Mother]:   Um – I don't have any questions, but –
>
> [The Court]: Okay. So, I'm denying your request to transfer the case out to California. That's all for today.

Transcript, Volume II at 8-9. The trial court then entered the following order on February 21, 2018:

> [T]he Court denies the Verified Motions for the following reasons:

1. In open court on February 8, 2017, the Court was made aware of [Mother] relocating to the State of California with [Child] and being in violation of I.C. 31-17-2.2.

2. On February 8, 2017, after the submission of evidence the Court granted temporary custody of [Child] to [Mother] based upon [Mother]'s promise that she would remain in Indiana with [Child] until a final hearing could be held regarding custody, parenting time and child support.

3. Since the inception of this case, the Court has observed that [Mother] has continuously attempted to inhibit the relationship between [Father] and [Child] without reasonable justification for doing so.

4. On March 20, 2017, the Court approved the parties' agreement allowing for [Mother] to relocate to the State of California with [Child] because [Father] was given extended parenting time with [Child] . . . .

5. The Court would not have allowed for [Child] to relocate to California with [Mother] if there had not been a provision in the agreement allowing for reasonable parenting time for [Father] because it has been found by this Court that it is in the best of interest [sic] of the child that [Child] has a relationship with [Father].

6. The Court reaffirms [Father]'s parenting time pursuant to the agreement approved and ordered by this Court on March 20, 2017, and [Father] is entitled to parenting time with [Child] from March 26, 2018 through April 6, 2018 which is [sic] the dates for spring break for 2018 based upon the local school year.

App. of Appellant, Vol. II at 9-10.  Mother now appeals.

# Discussion and Decision

## I. Standard of Review

[7]  We review a court's decision to exercise jurisdiction for an abuse of discretion. *Barwick v. Ceruti*, 31 N.E.3d 1008, 1014 (Ind. Ct. App. 2015).  "In reviewing the court's decision, we consider only the evidence most favorable to the decision and reverse only where the result is clearly against the logic and effect of the facts and the reasonable inferences to be drawn therefrom."  *Id.*  We review matters of statutory interpretation *de novo* because they present pure questions of law.  *Gardiner v. State*, 928 N.E.2d 194, 196 (Ind. 2010).

## II. Jurisdiction

[8]  Mother argues the trial court abused its discretion in denying her motion to transfer jurisdiction to California.  Specifically, Mother argues the trial court failed to consider the factors enumerated in Indiana Code section 31-21-5-8(b).  In turn, Father argues application of the statute is unnecessary because he continues to reside in Indiana.

[9]  We begin by noting that Father's argument confuses jurisdiction with an inconvenient forum.  The question before us is not one of jurisdiction—the trial court's jurisdiction over this matter is undisputed.  *See* Brief of Appellant at 11.  "The fundamental principle underlying the UCCJA is that once a court with a jurisdictional basis exercises jurisdiction over a 'custody' issue, that court

retains exclusive jurisdiction over all custody matters so long as a 'significant connection' remains between the controversy and the state." *In re Custody of A.N.W.*, 798 N.E.2d 556, 561 (Ind. Ct. App. 2003) (citation omitted), *trans. denied*. As long as one parent continues to reside in Indiana, a "significant connection" to Indiana remains, but a trial court has discretion to defer to another court that is a more convenient forum to litigate the issues. *Id*. at 561-62.

[10] In determining whether to relinquish its jurisdiction to a more convenient forum, a court is required to consider whether it is in the child's best interest that another state assume jurisdiction. *Barwick,* 31 N.E.3d at 1015. Indiana Code section 31-21-5-8 provides:

> (a) An Indiana court that has jurisdiction under this article to make a child custody determination may decline to exercise its jurisdiction at any time if the Indiana court determines that:
>
>> (1) the Indiana court is an inconvenient forum under the circumstances; and
>>
>> (2) a court of another state is a more appropriate forum.
>
> The issue of inconvenient forum may be raised on motion of a party, the court's own motion, or request of another court.
>
> (b) Before determining whether an Indiana court is an inconvenient forum, the Indiana court shall consider whether it is appropriate for a court of another state to exercise jurisdiction. For this purpose, the Indiana court shall allow the parties to

submit information and shall consider the relevant factors, including the following:

> (1) Whether domestic violence has occurred and is likely to continue in the future and which state is best able to protect the parties and the child.

> (2) The length of time the child has resided outside Indiana.

> (3) The distance between the Indiana court and the court in the state that would assume jurisdiction.

> (4) The relative financial circumstances of the parties.

> (5) An agreement of the parties as to which state should assume jurisdiction.

> (6) The nature and location of the evidence required to resolve the pending litigation, including the child's testimony.

> (7) The ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence.

> (8) The familiarity of the court of each state with the facts and issues in the pending litigation.

[11]    Mother argues she referenced the foregoing factors and gave verified supporting facts for each, but the trial court "completely disregarded all of the eight factors, both in its oral ruling and its written Order." Brief of Appellant at 13.

Considering the statute states the court "shall consider" the factors, Mother contends the trial court abused its discretion. We agree.

[12] We have held that this "list is not exclusive, and that courts may consider all relevant factors, including factors not listed in Indiana Code section 31-21-5-8(b)." *Tamasy v. Kovacs*, 929 N.E.2d 820, 827 (Ind. Ct. App. 2010). And, in the few cases applying the current statute,[1] the trial court has considered all relevant factors. *See Barwick*, 31 N.E.3d at 1015 (the trial court "thoroughly reviewed each of" the factors and made specific findings); *Tamasy*, 929 N.E.2d at 834 (the trial court made findings regarding seven of the factors, save domestic violence, as well as additional findings that supported its determination). However, whether a trial court *must* consider all relevant factors appears to be an issue of first impression.

[13] Statutory interpretation is a function for the courts, and our goal in statutory interpretation is to determine, give effect to, and implement the intent of the legislature as expressed in the plain language of its statutes. *State v. Prater*, 922 N.E.2d 746, 749 (Ind. Ct. App. 2010), *trans. denied*. We look first to the statutory language, and we presume that the words of the statute were selected and employed to express their common and ordinary meanings. *F.D. v. Indiana Dep't of Child Servs.*, 1 N.E.3d 131, 136 (Ind. 2013). "Where the statute is

---

[1] Under the previous version of the statute, Indiana Code section 31-17-3-7 (1997), a trial court "may take into account" the section's five enumerated factors when determining whether it is an inconvenient forum. Ind. Code § 31-17-3-7(c) (1997).

unambiguous, the Court will read each word and phrase in this plain, ordinary, and usual sense, without having to resort to rules of construction to decipher meanings." *Id*. (citation omitted). Accordingly, clear and unambiguous statutes leave no room for judicial construction.

[14] Indiana Code section 31-21-5-8(b) states that, "[b]efore determining whether an Indiana court is an inconvenient forum, the Indiana court *shall* consider whether it is appropriate for a court of another state to exercise jurisdiction," and that, "[f]or this purpose, the Indiana court *shall* allow the parties to submit information and *shall* consider the relevant factors." (Emphases added.) The word "shall" is presumptively treated as mandatory "unless it appears clear from the context or the purpose of the statute that the legislature intended a different meaning." *Indiana Civil Rights Comm'n v. Indianapolis Newspapers, Inc.*, 716 N.E.2d 943, 947 (Ind. 1999). Here, we find no indication the legislature intended a different meaning for the word "shall." Therefore, we conclude the plain language of Indiana Code section 31-21-5-8(b) requires a trial court to consider the enumerated factors as well as any additional relevant factors for which the parties submit information. This is not to say, however, that a trial court need explicitly address each enumerated factor; as the statute's use of "relevant" suggests, the trial court need not consider factors not implicated by the evidence. Ind. Code § 31-21-5-8(b).

[15] Here, the trial court neither issued findings concerning the relevant factors nor orally explained that it had considered them. Apparently, the trial court's only consideration was its finding that Mother had "continuously attempted to

inhibit the relationship" between Father and Child. App. of Appellant, Vol. II at 9; *see also* Tr., Vol. II at 8-9. Although a permissible consideration, this alone is insufficient to satisfy the statute. Moreover, the trial court clearly stated:

> I'm not gonna' do it. I'm not giving up jurisdiction on this case. So, I don't know where that leaves either one of you but I'm not gonna' do it. The [UCCJA] allows this Court to retain it because this is where the decree of paternity was entered. And I'm keeping it. And I'm not giving it away. So, [Mother], if you want this Court to address *any* issues regarding [Child], I suggest that you show up in this courtroom for hearings.

Tr., Vol. II at 8-9.

[16] Clearly, the trial court was determined to retain jurisdiction—regardless of whether California was a more convenient forum. Indiana Code section 31-21-5-8(b) requires a trial court consider all relevant factors *before* making such determination. Therefore, we conclude the trial court abused its discretion.

[17] Since Mother submitted information regarding the enumerated factors, we find it unnecessary for the trial court to conduct another hearing. On remand, we direct the trial court to *consider* the relevant factors *before* determining whether California is a more convenient forum.

# Conclusion

[18] Concluding the trial court erred by failing to consider relevant factors pursuant to Indiana Code section 31-21-5-8(b), we vacate the trial court's order and remand with instructions.

Vacated and remanded.

Baker, J., and May, J., concur.