FILED

Oct 25 2017, 7:33 am

C L E R K
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANT

Katherine A. Harmon
Jared S. Sunday
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Michael A. Wilkins
Nissa M. Ricafort
Erin M. Durnell
Indianapolis, Indiana

# I N  T H E
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Maimouna Coulibaly, <br> *Appellant-Petitioner,* <br><br> v. <br><br> Eric Stevance, <br> *Appellee-Respondent* | October 25, 2017 <br><br> Court of Appeals Case No. <br> 49A02-1702-DR-235 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable John M.T. Chavis, II, Judge <br><br> The Honorable Victoria Ransberger, Magistrate <br><br> Trial Court Cause No. <br> 49D05-1602-DR-7130 |

**Altice, Judge.**

## Case Summary

[1]     Maimouna Coulibaly (Mother) appeals from the trial court's finding that it lacked jurisdiction to modify a child custody order issued in the west-African

nation of Mali in favor of Eric Stevance (Father). On appeal, Mother argues that the trial court erred in concluding that it was required to enforce the Malian court's order under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) as codified in Indiana. Specifically, Mother argues that the trial court erred in concluding that the Malian order was not the product of laws that violate fundamental human rights.

[2] We affirm.[1]

### Facts & Procedural History

[3] Mother and Father are both dual citizens of France and Mali. They were married in Mali in 2001 and had two children, a daughter born in 2002 and a son born in 2004, who are also dual citizens of Mali and France. Father is a computer science engineer, and throughout the marriage and thereafter, he has operated a company that provides internet service in Mali. Mother is a physician, and she and the children lived in France with Father's consent from 2005 until 2007 while pursuing her Master's degree in epidemiology. Father remained in Mali during this time but visited Mother and the children regularly. Mother returned to Mali in 2007, where she practiced as an OB/GYN. Mother wished to immigrate to Canada, and she and Father both filed the necessary

---

[1] We held oral argument in this matter on September 21, 2017. We thank counsel for the quality of their written and oral advocacy.

paperwork to do so. At some point, however, Father made it clear that he did not want to leave Mali or the business he ran there.

[4] The marriage subsequently deteriorated, and Father filed a petition for divorce in Mali on March 14, 2008. Mother and Father appeared before a conciliatory magistrate and were ordered to participate in a six-month reconciliation period. A few months later, Mother retained counsel and asked the Malian court to waive the reconciliation period and rule on the divorce petition. Both parties appeared at the final hearing with counsel and presented evidence. At the hearing, Mother indicated that she wished to live outside of Mali and she alleged that Father had been physically abusive to her. Father denied Mother's abuse accusation and asserted that Mother was determined to move to Canada or Europe and he feared she would kidnap the children and cease contact with him. Both parties asked for custody of the children. Following the hearing, but prior to the issuance of the Malian court's custody order, Mother took the children and moved to France.

[5] On October 6, 2008, the Malian court issued its decree awarding Father custody of the children. Despite this order, Mother has not returned the children to Father, and she unsuccessfully sought relief from the order in both Mali and France before moving to the United States and seeking such relief in Indiana. In her current challenge to the Malian custody order, Mother argues that the order is unenforceable under the UCCJEA because Mali's child custody laws violate fundamental human rights.

[6]     At the five-day evidentiary hearing, Mother presented evidence regarding Mali's laws, culture, and customs. Mother also presented testimony concerning allegedly widespread judicial corruption in Mali, difficulties noncustodial mothers in Mali reportedly face in securing visitation with their children, and a number of cultural practices oppressive to women and children. Much of Mother's evidence focused on the prevalence of female genital mutilation (FGM)[2] in Mali and the absence of a law specifically prohibiting the procedure.[3] Although neither Mother nor her sisters underwent FGM, Mother's evidence indicated that as many as ninety percent of women and girls in Mali are subjected to the procedure, which has been condemned by human rights groups worldwide. Mother also presented testimony suggesting that spousal and child abuse was widely accepted and rarely prosecuted in Mali.

[7]     The trial court rejected Mother's arguments, finding that although government corruption may have been a problem in Mali at the time of the parties' divorce, there was no evidence of bribery, corruption, or influence in the divorce proceedings at issue here. With respect to the issue of FGM, the trial court

---

[2] The World Health Organization describes FGM as "compris[ing] all procedures that involve partial or total removal of the external female genitalia, or other injury to the female genital organs for non-medical reasons." World Health Organization, Media Centre, Female Genital Mutilation Fact Sheet, http://www.who.int/mediacentre/factsheets/fs241/en/ (last updated February 2017). The procedure is almost always performed on children, has no medical benefits, and has many negative physical and mental health consequences, both short- and long-term. *Id.*

[3] According to Mother, Mali has outlawed FGM in government-funded health centers, but not the practice itself. Testimony was presented at the evidentiary hearing that a law specifically prohibiting FGM had not yet been passed but was being worked on. At least one witness testified that FGM was already punishable under existing criminal laws in Mali. Although it is not entirely clear on the record before us whether FGM is illegal in Mali, the parties are in agreement that the practice is very widespread.

noted that Father described the practice as "horrible." *Appellant's Appendix* at 25. The court found no evidence that the parties' daughter was in danger of being subjected to FGM if she returned to Mali, and noted further that there was no indication that Mother had raised the issue of FGM in the Malian court proceedings. The trial court also found that although there might have been some cultural acceptance of domestic violence and child abuse in Mali at the time of the divorce, there were laws on the books prohibiting such abuse and agencies charged with investigating allegations thereof. The trial court rejected Mother's claim that the Malian court had applied a presumption that Father should have custody of the children, finding instead that the Malian court's order reflected its consideration of several factors relating to the best interests of the children. Accordingly, the trial court found no violation of fundamental human rights and concluded that the Malian court's order was entitled to enforcement and that the Indiana court lacked jurisdiction to modify it. The trial court ordered the children immediately returned to Father, but subsequently approved the parties' agreement to stay enforcement of the order pending appeal.

## Discussion & Decision

[8] The trial court in this case entered special findings of fact and conclusions thereon pursuant to Trial Rule 52(A). Our review of such findings and conclusions is two-tiered. *In re Paternity of D.T.*, 6 N.E.3d 471, 474 (Ind. Ct. App. 2014). First, we consider whether the evidence supports the findings, and second, whether the findings support the judgment. *Id.* The trial court's

findings and conclusions will be set aside only if they are clearly erroneous—that is, where a review of the record leaves us with a firm conviction that a mistake has been made. *Id.* In conducting our review, we will neither reweigh the evidence nor judge the credibility of witnesses. *Id.* Instead, we will consider only the evidence favorable to the trial court's judgment. *Id.*

[9] The ultimate issue presented on appeal is whether the trial court properly recognized and enforced the Malian court's custody order. Our court discussed the history and purposes of the predecessor to the UCCJEA (known as the UCCJA/UCCJL) in *Ruppen v. Ruppen*, 614 N.E.2d 577, 580-81 (Ind. Ct. App. 1993):

> The National Conference of Commissioners on Uniform State Laws adopted the Uniform Child Custody Jurisdiction Act (UCCJA) in 1968 to remedy the "intolerable state of affairs [in child custody disputes] where self-help and the rule of 'seize-and-run' prevail[ed] rather than the orderly processes of the law." 9 U.L.A. 117 (1988) (prefatory note).

> Registering similar concerns, the Indiana General Assembly adopted its version of the UCCJA, the Uniform Child Custody Jurisdiction Law (UCCJL), in 1977. 1977 Ind. Acts Pub. L. No. 305, § 1 *et seq.*; IND. CODE 31-1-11.6-1 *et seq.* The UCCJL's stated purposes include, in part, the avoidance of competition among jurisdictions and conflict with courts of other states in matters of child custody, the promotion of interstate cooperation so that custody decrees will be rendered in the state best able to decide the case in the interest of the child, and the deterrence of abductions and other unilateral removals of children undertaken to obtain custody awards. IND. CODE 31-1-11.6-1(a)(1), (2), and (5).

Under the UCCJL, an Indiana court has an affirmative duty to question its jurisdiction when it becomes aware of an interstate dimension in a child custody dispute. *Horlander v. Horlander* (1991), Ind. App., 579 N.E.2d 91, 95, *trans. denied*. The trial court must first determine whether it has jurisdiction, and, if it does, whether to exercise that jurisdiction. *Id*. The UCCJL has international application, as well. *Id*.; IND.CODE 31-1-11.6-23.

One of the purposes of the UCCJEA "is to prevent parents from seeking custody in different jurisdictions in an attempt to obtain a favorable result." *Tamasy v. Kovacs*, 929 N.E.2d 820, 825 (Ind. Ct. App. 2010).

[10]   Whether the Malian custody order meets fundamental jurisdictional requirements of the UCCJEA is not in dispute—Mother concedes that Mali was the children's home state at the time the custody order was issued and that she had notice and an opportunity to be heard consistent with UCCJEA standards. At issue is Ind. Code § 31-21-1-3, which provides as follows:

> (a) An Indiana court shall treat a foreign country as if the foreign country were a state of the United States for purposes of applying [the UCCJEA].

> (b) Except as otherwise provided in subsection (c), a child custody determination made in a foreign country under factual circumstances in substantial conformity with the jurisdictional standard of this article must be recognized and enforced under IC 31-21-6.

> (c) *An Indiana court need not apply this article if the child custody law of a foreign country violates the fundamental principles of human rights.*

(emphasis supplied).  Subsection (c), which has been referred to as the UCCJEA's "escape clause," acknowledges that there are circumstances in which foreign decrees might not be entitled to recognition and enforcement in the United States.  *See generally* D. Marianne Blair, *International Application of the UCCJEA: Scrutinizing the Escape Clause*, 38 Fam. L. Q. 547, 582 (2004).  The UCCJEA does not define the phrase "fundamental principles of human rights," and the official comment to the relevant section of the UCCJEA expressly "takes no position on what laws relating to child custody would violate fundamental freedoms."  UCCJEA, § 105 cmt.  The comment does note, however, that "[t]he same concept is found in Section 20 of the Hague Convention on the Civil Aspects of International Child Abduction."  *Id.*  The relevant portion of the Hague Convention permits a country to refuse to return a child if doing so would violate "'the fundamental principles of the requested State relating to the protection of human rights and fundamental freedoms,' which has been interpreted by the United States Department of State as 'utterly shock[ing] the conscience or offend[ing] all notions of due process.'"  *Matter of Yaman*, 105 A.3d 600, 611 (N.H. 2014) (quoting *Toland v. Futagi*, 40 A.3d 1051, 1058 (Md. 2012)).  The UCCJEA comment similarly notes that the provision "is a traditional one in international agreements, [but] is invoked only in the most egregious cases."  UCCJEA, § 105 cmt.  The comment also seeks to narrow the reviewing court's focus by providing that "the court's scrutiny should be on the child custody law of the foreign country and not on other aspects of the other legal system."  *Id.*

[11] No Indiana court has interpreted the UCCJEA's escape clause, and case law from other states is sparse.[4] It is apparent to us, however, that the simple fact that a foreign jurisdiction's law differs from our own or strikes us as outdated is insufficient to establish a violation of fundamental principles of human rights. *See Yaman*, 105 A.3d at 611 ("That a foreign jurisdiction's law is different from ours is not an indication that it violates fundamental principles of human rights, and, therefore, that is not the test under the UCCJEA."). *See also* Blair, *supra*, at 565 ("The commentary to Section 105(c) reflects the drafters' concern that the provision not become the basis for magnifying every difference between the U.S. legal system and that of a foreign nation to virtually stymie effective application of the UCCJEA in international cases.").

[12] On appeal, Mother argues that Mali's child custody law violates fundamental human rights because it favors men over women. In support, Mother notes that Mali's divorce law is fault-based,[5] and she directs our attention to a section of

---

[4] The majority of the cases Mother cites on appeal do not discuss or apply the relevant provision of the UCCJEA, and they consequently offer little in the way of guidance on the issue before us. *See, e.g., Tostado v. Tostado*, 151 P.3d 1060, 1064 n.7 (Wash. Ct. App. 2007) (noting that there had been no claim or finding that the Mexican custody order at issue violated fundamental human rights); *Hector G. v. Josefina P.*, 771 N.Y.S.2d 316 (N.Y. Sup. Ct. 2003) (noting that the party challenging the foreign custody order had not raised a human rights argument); *Nunez v. Ramirez*, No. CV07-01205-PHX-EHC, 2008 WL 898658, at *7 (D. Ariz. Mar. 28, 2008) (declining to enforce a foreign custody order on the grounds that it was not issued under factual circumstances in substantial conformity with the UCCJEA's jurisdictional standards without any discussion of whether the order violated fundamental human rights).

[5] Malian law provides that either spouse may request a divorce on the basis of adultery, "excesses, ruthlessness, and serious insults or abuse," conviction of one of the spouses for "ignominious or corporal punishment", alcoholism, and "impossibility of the spouse to satisfy conjugal obligations." *Appellee's Appendix Vol. 2* at 18. The law provides women with additional grounds for divorce, specifically, a husband's refusal to provide food, clothing, and shelter, or his failure to pay an agreed-upon dowry. *Id.*

Mali's child custody law providing that "[t]he children will be in custody of the spouse who obtained the divorce unless the court . . . orders for the best interests of the children, that all or some of them will be cared for by the other spouse or a third person." *Appellee's Appendix Vol. 2* at 22. Although this provision is not gender-based on its face, Mother argues that Mali's marital laws evince a preference for men such that women will more often be found at fault for a divorce, resulting in a de facto paternal preference in child custody decisions. Specifically, Mother notes that statutory law in Mali expressly provides that "[t]he husband owes protection to his wife, the wife obedience to her husband." *Id.* at 14. The law provides further that the husband is the head of the household, that the household expenses "fall principally on him," that he has the right to choose the family residence, and that the wife must live with him and he must receive her. *Id.* Additionally, a woman is prohibited from running a business without her husband's permission.[6]

[13]  In light of the prevailing fault-based divorce system, it is unsurprising that the Malian court made a number of findings with respect to the parties' conduct during the marriage. The court expressly found Mother's physical abuse allegation to be unsupported. The court also noted that under Malian law, a

---

[6] Mother also cites certain other laws, apparently for the proposition that Malian law is, on the whole, oppressive to women. Specifically, Mother notes that men in Mali are permitted to have multiple wives, while women may have only one husband. Mother notes further that the marital laws permit (but do not require) the payment of nominal dowry by the husband upon marriage "where required by custom." *Appellee's Appendix Vol. 2* at 9. These laws have no clear bearing on child custody or the allocation of fault upon divorce, and they are consequently irrelevant to the issue before us.

husband is entitled to choose the family residence and that Mother's dispute regarding Father's decision to live in Mali was therefore grounds for divorce. The Malian court further found that Mother admitted that she had "a habit of uttering insulting and offensive remarks toward" Father, which constituted "serious abuse", and also that Mother's persistence in her plan to emigrate with the children without Father's knowledge or consent was a violation of her duty of loyalty, a mutual duty imposed by Malian marital law upon both spouses irrespective of gender. *Id.* at 4. In light of these findings, the trial court granted Father's petition for divorce and dismissed Mother's counter petition.

[14] However, the Malian court did not actually apply the statutory custody presumption in favor of Father as the party who obtained the divorce. Instead, the Malian court expressly indicated that custody could be awarded to Father or Mother, and that *only* the best interests of the children controlled this decision. *Id*. at 5. The court found that Mother's emigration plans "could bring important risks and unknowns to the lives of the children" and that "she offers no promises of stability or safety for the children." *Id*. The court further found that Mother's decision in this regard "results in necessarily depriving the children from the affection of one of their parents," i.e., Father. *Id*. The court noted further that Father wished for Mother to have extensive visitation with the children, and that he had sufficient and stable resources to provide for their education and care. In light of its findings, the Malian court awarded custody to Father and visitation rights to Mother.

[15]    In reviewing the Malian court's order, the Indiana trial court found that Mali's child custody law as applied in this case did not violate fundamental principles of human rights and was in fact in substantial conformity with Indiana's child custody law. Mother argues that the trial court was limited to considering Malian law as written, and that it therefore erred in considering whether a custody presumption was in fact applied in this case. In support, Mother cites *Yaman*, in which the Supreme Court of New Hampshire reasoned that "[t]he comments to the UCCJEA . . . clarify that the analysis is meant to focus on the foreign jurisdiction's substantive law, and not its legal system *or how the law is implemented.*" 105 A.3d at 611 (emphasis supplied). We believe that the import of the court's statement in this regard is that claims of mere legal error are insufficient to establish a violation of fundamental human rights, a proposition with which we readily agree. The UCCJEA does not require Indiana courts to reevaluate the merits of every foreign custody decree that comes before it, and we will not presume to understand the law of a foreign nation better than that nation's own judicial officers.

[16]    Nevertheless, we do not believe that the UCCJEA limits the courts of this state to considering the foreign jurisdiction's law only on its face, without regard to whether that law was applied in a manner violative of fundamental human rights. One can imagine multiple circumstances in which a foreign jurisdiction's custody law is unobjectionable as written, but applied in a manner that clearly violates a parent's or child's fundamental human rights. For example, the relevant law might provide that the custody decision is to be based

upon the best interests of the child, but what if a foreign court nevertheless places a child with one parent or another based solely on that parent's race, ethnicity, nationality, religion, or gender? We see nothing in the comments to the UCCJEA that would require a court to turn a blind eye to the realities of the custody order before it in such a situation, and we are unwilling to take an approach that would require the courts of this state to become a party to a violation of human rights by enforcing such an order.

[17] Here, although Mother was determined to be at fault for the divorce based in part on the Malian court's finding that she had violated the gender-based statutory duty of obedience to her husband, the Malian court's order makes it clear that the child custody decision was not based on the relative fault of the parties. Instead, the Malian court expressly stated that its decision was based solely on the best interests of the children, and it conducted an analysis of those interests not at all unlike the one applied by the courts of this state. Thus, when considering Mali's child custody law as applied in this case, we cannot conclude that Mother has established a violation of fundamental human rights.

[18] Moreover, even if we confine our analysis to Mali's child custody law as written, we find no violation of fundamental human rights. Mother essentially argues that any "presumption of custody is a violation of the fundamental right for a parent to the care, custody, and control of the child." *Appellant's Brief* at 18. But custodial preferences are not foreign to American jurisprudence. Indeed, gender-based custody preferences were the norm in the United States in the not-so-distant past. *See generally* Alexandra Selfridge (Spring 2005), *Equal*

*Protection and Gender Preference in Divorce Contests over Custody*, 16 J. Contemp. Legal Issues 165 (2007).

[19] Although not directly on point, we find *Malik v. Malik*, 638 A.2d 1184 (Md. Ct. Spec. App. 1994), instructive. The court in that case did not consider the UCCJEA's escape clause, but it did consider whether enforcement of a Pakistani custody decree was required under general principles of comity, which provide that a foreign judgment will be given no effect if it is repugnant to the forum state's strong public policy. In relevant part, the court reasoned that:

> If the only difference between the custody laws of Maryland and Pakistan is that Pakistani courts apply a paternal preference the way Maryland courts once applied the maternal preference, the Pakistani order is entitled to comity. A custody decree of a sister state whose custody law contains a preference for one parent over another would be entitled to comity, provided, of course, that the sister state's custody law applies the best interest of the child standard.

*Id.* at 1191. Because the court could not, on the record before it, determine whether the Pakistani order was entitled to comity, it remanded for further proceedings.

[20] Following remand, the case again came before the Maryland appellate court in *Hosain v. Malik*, 671 A.2d 988 (Md. Ct. Spec. App. 1996). The *Hosain* court affirmed the trial court's decision to enforce the Pakistani custody decree despite evidence that the order was based in part on the Islamic doctrine of

Hazanit, which the court described as "embod[ying] complex Islamic rules of maternal and paternal preference, depending on the age and sex of the child." *Id.* at 1004. In reaching its conclusion, the *Hosain* court noted that the evidence presented supported a finding that Hazanit was merely one factor considered by the Pakistani court in determining the best interests of the child. In concluding that consideration of this factor was not repugnant to Maryland public policy, the court reasoned as follows:

> We recognize that Hazanit is different in many respects from the traditional maternal preference once followed in this State. We recognize, however, that Hazanit is nonetheless similar to the traditional maternal preference in that they both are based on very old notions and assumptions (which are widely considered outdated, discriminatory, and outright false in today's modern society) concerning which parent is best able to care for a young child and with which parent that child best belongs. Viewed in this regard, standing as a factor to be weighed in the best interest of the child examination, Hazanit is no more objectionable than any other type of preference. As we noted in *Malik*, the courts of this State will not refuse to enforce child custody awards of those states still recognizing the maternal preference as a factor.

*Id.* at 1004-05 (footnote omitted). The *Hosain* court also concluded that the Pakistani court's consideration of the mother's adultery as a factor in the custody decision was not repugnant to Maryland public policy, noting that Maryland courts are permitted to consider parental adultery in determining custody, at least to the extent that it affects the child's welfare. *Id.* at 1006.

[21] We acknowledge that the comity standard applied in *Hosain* and *Malik* differs from the human rights standard at issue here, and we do not intend to suggest

that the simple fact that a doctrine or policy was once prevalent in the United States conclusively demonstrates its compatibility with principles of fundamental human rights. Nevertheless, we note that like in *Hosain*, the parental preference at issue in this case is not conclusive. Rather, Malian law provides that "children will be in custody of the spouse who obtained the divorce unless the court . . . orders for the best interests of the children, that all or some of them will be cared for by the other spouse or a third person." *Appellee's Appendix Vol. 2* at 22. Thus, the law does not permit Malian courts to blindly apply a parental presumption or ignore the best interests of the children. Rather, the law appears to do nothing more than allocate the initial burden of rebutting the custodial presumption in favor of the innocent spouse to the at-fault spouse. Further, although Mali's marriage laws impose different duties on husbands and wives based on gender, either spouse may be granted a divorce based on the other spouse's failure to fulfill his or her respective duties. Whatever we might think about the wisdom of Mali's marital and custody laws in this regard, we simply cannot say that they are so utterly shocking to the conscience or egregious as to rise to the level of a violation of fundamental principles of human rights.

[22] We also find Mother's focus on Mali's failure to outlaw FGM to be misplaced. While we have little difficulty concluding that FGM is itself a human rights violation, we are not as certain that a country's failure to pass a law specifically prohibiting the practice constitutes a violation of fundamental principles of

human rights.[7] In any event, the comments to the UCCJEA make it clear that our scrutiny is limited to Mali's child custody law and not on other aspects of its legal system, including the law (or absence of law) concerning FGM. At oral argument, Mother suggested we should nevertheless find Mali's failure to outlaw FGM to be relevant because the practice of FGM is, as a general matter, likely to affect children. But consideration of every law likely to affect children would throw the doors wide open—laws regarding civil rights, education, health care, housing, and inheritance, to name just a few, would all be fair game in evaluating a foreign custody decree. Such an approach would put the courts of this state in the untenable position of passing judgment on the entire legal system of a foreign country, a result plainly at odds with the clearly stated intent of the drafters of UCCJEA.

[23] Mother's remaining arguments suffer the same infirmity—she essentially asks us to look beyond Mali's custody law to conclude that Mali's legal system and culture are, on the whole, so oppressive to women that no custody order issued in that country could be enforceable in the United States.[8] We are in no position to make such a judgment, and the language of the UCCJEA prohibits us from attempting to do so. Mother has not established that Mali's child

---

[7] Although FGM has been prohibited in the United States by federal law, *see* 18 U.S.C. § 116, many states, including Indiana, have not passed laws against FGM. It would nevertheless appear that existing criminal statutes prohibiting battery and child abuse could be used to prosecute FGM practitioners and parents who procure their services.

[8] Mother also appears to argue that it is not in the children's best interests to be returned to Father's custody, but the best interests standard is inapplicable to our jurisdiction analysis under the UCCJEA.

custody laws violate fundamental principles of human rights, and she is consequently unable to avoid enforcement of the Malian custody decree.

[24] Judgment affirmed.

[25] Baker, J. and Bailey, J., concur.