

I N T H E

# Court of Appeals of Indiana



FILED

Apr 11 2025, 9:47 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

## Rachel Gard-Holm,

*Appellant-Defendant*

v.

## Lars Lund Holm,

*Appellee-Plaintiff*

---

April 11, 2025

Court of Appeals Case No.
24A-MI-2810

Appeal from the Allen Superior Court

The Honorable Lori K. Morgan, Judge

The Honorable Beth A. Webber, Magistrate

Trial Court Cause No.
02D08-2312-MI-742

---

**Opinion by Chief Judge Altice**
Judge Brown concurs.
Judge Tavitas concurs with separate opinion.

**Altice, Chief Judge.**

## Case Summary

Rachel Gard-Holm (Mother) and Lars Lund Holm (Father) are the natural parents of a minor daughter, N.G-H. (Child), born in Germany in 2023. Mother appeals the trial court's decision that, under Indiana's Uniform Child Custody Jurisdiction Act (UCCJA), Germany is Child's home state and Indiana does not have jurisdiction to make a custody determination.

We affirm.

## Facts & Procedural History

Mother, a United States citizen, and Father, a citizen of Denmark, married in Chicago in December 2021. In May 2023, Mother, while pregnant, traveled to Germany to meet and live with Father in an apartment they had leased. Child was born prematurely on July 12, 2023, and required weeks of hospitalization.[1] In October 2023, Mother and Father separated, and following allegations by Mother that Father had physically abused her, a German court issued a protective order restricting Father to supervised visits.

Mother sought the assistance of public legal aid in Germany and was appointed an attorney, Jasmin Fendt, who spoke English. On November 15, 2023, Mother met with Attorney Fendt and signed custody "paperwork" that Attorney Fendt

---

[1] Child has American and Danish citizenship.

prepared. *Transcript* at 19. That day, Mother filed in the District Court of Flensburg, Germany (the German Court) an application "to transfer sole custody of [Child]" to Mother. *Appellee's Appendix* at 13. On November 21, Mother left Germany and traveled to Indiana with Child, without Father's knowledge, using an emergency passport that Mother obtained through the U.S. Embassy.

[5] A few weeks later, on December 15, 2023, Mother filed in the Allen Superior Court (the Indiana Court) a verified petition for emergency jurisdiction and to establish custody. Among other things, Mother stated "that [Father] has filed in Germany a request of establishing [Child]'s right of residency and is requesting custody of the minor child." *Appellant's Appendix* at 12. She also alleged that she was fearful that Father "will travel to the United States to harm her and/or the minor child and/or attempt to remove the child from [her] care," that there was no custody order in place, and that it was in Child's best interest for the Indiana Court to grant her temporary custody. *Id.* at 13.

[6] On January 8, 2024, the German Court held a hearing on Mother's application for custody of Child. Father appeared in person and with his legal counsel, as did Attorney Fendt and a court-appointed procedural guardian for Child. Mother did not appear. Following the hearing, the German court issued a decision, finding that Mother had filed proceedings for custody on November 15, 2023 and that, after her application was scheduled for hearing to be held on January 8, 2024, Mother traveled to the United States without Father's consent.

The German Court withdrew joint custody and granted temporary custody of Child to Father (the German Custody Order).

[7] On April 23, 2024, Father filed in the Indiana Court a verified motion to enforce the German Custody Order and for emergency return of Child to Father, as well as a memorandum in support. Father asserted that Mother, having initiated the November 2023 custody proceeding in Germany, had "submit[ed] herself to the jurisdiction of the German [C]ourt," and although it was set for hearing, she "absconded" with Child from Germany to Fort Wayne, Indiana and filed a second petition for custody there. *Id*. at 18. Father pointed out that Mother "falsely allege[d]" in her Indiana petition that Father had initiated custody proceedings in Germany when, in fact, it was Mother who filed the application for sole custody in Germany. *Id*. at 37. Attaching the German Custody Order to his motion, Father argued that the German Court had entered a valid and enforceable custody determination and had exclusive and continuing jurisdiction over this matter, and, pursuant to the UCCJA, the Indiana Court was bound to treat the German Custody Order as if it were entered by a sister state and enforce it.[2] Father contemporaneously filed a verified petition to register and file the German Custody Order.

---

[2] Father advised in his motion that he had previously filed an application for the return of Child to Germany under the Hague Convention – which, according to correspondence received by the Indiana Court from the U.S. Department of State, "may affect [the Indiana Court's] administration of the custody proceeding" – but explained he had not commenced proceedings thereunder, having decided to first pursue enforcement of the German Custody Order in the Indiana Court. *Id.* at 15. Consistent with that, subsequent correspondence received by the Indiana Court from the Department of State stated that Father had not yet filed a petition

[8] Mother filed a response to Father's motion, arguing that Indiana, not Germany, was Child's home state under the UCCJA, as Child, born in July 2023, had not lived in Germany for six months "before Mother fled Father's abuse and brought Child to the U.S." in November 2023. *Id*. at 80. She further argued that, even if Indiana was not Child's home state, Indiana had jurisdiction under the UCCJA's "significant connections test" and could make its own custody determination. *Id*.

[9] On August 2, 2024, the Indiana Court held a hearing on the issue of whether Indiana had jurisdiction. Mother acknowledged meeting with Attorney Fendt on November 15 and the filing of her application for custody that date but maintained that the application was only "a backup plan" – not intended to be filed if Mother was able to get a passport for Child and leave the country – and that Attorney Fendt filed the application without her permission or knowledge. *Transcript* at 18. Mother also stated that she provided her email and United States address to Attorney Fendt, and that they exchanged a few emails after Mother's arrival in the United States, but Attorney Fendt never sent her a copy of the pleading or notified Mother that it had been filed.

[10] As to the January 8, 2024 hearing held in the German Court, Mother initially testified that she was "not aware" that a hearing was to be held on her application. *Id.* at 17. She later testified that she "knew about it" but "there was

under the Hague Convention and had "decided to first pursue enforcement of a German custody order through the [UCCJA]." *Id*. at 85.

no way for [her] to be in contact with anybody," she had "no access to court documents," and her lawyer "didn't speak much English." *Id*. As to the ensuing German Custody Order, Mother testified that she only learned of it in April 2024, when Father filed his motions in Indiana that sought to register and enforce that order. Asked whether she contacted Attorney Fendt once she learned of the German Custody Order, Mother replied, "I didn't know I could. So, no." *Id*. at 34.

[11] Father, who was still living in the parties' apartment in Germany, appeared by Indiana counsel and in person by video at the Indiana Court hearing. He testified that Mother did not consult him before leaving Germany with Child and that he had appeared at the January 2024 hearing in the German Court and was awarded temporary custody of Child. Father testified it was late December 2023 that he learned from his German attorney that Mother had commenced a custody proceeding in Indiana. Father asked the Indiana Court to enforce the German Custody Order and order that Child be returned to Germany.[3]

[12] On November 18, 2024, the Indiana Court issued findings and conclusions concerning jurisdiction, determining, in part:

---

[3] Following the hearing, Mother filed an Ind. Trial Rule 60(B) motion asking the Indiana Court to reconsider its decision to admit certain documents into evidence at the August 2 hearing over Mother's objection. The trial court summarily denied Mother's motion.

7. [] Mother used the German Courts to obtain the equivalent of an order for protection in Germany against Father in October of 2023.

* * *

9. [] Mother obtained legal counsel in Germany through public legal aid . . . [and]met with her attorney in Germany on November 15, 2023.

10. On November 15, 2023, Mother, through her attorney, filed a child custody cause of action in the German Courts.

11. Mother contends that she did not ask the attorney to file anything on her behalf and was unaware that her attorney filed pleadings in the German Court.

* * *

14. [] Mother's [Indiana] pleading regarding Jurisdiction and Emergency Custody stated that Father filed for custody of the minor child in Germany.

15. . . . [I]n reality, Mother's attorney filed paperwork in the German Courts.

* * *

19. Mother alleges that she provided her attorney in Germany with her address in the United States but that her attorney did not provide any documents or correspondence to her once she entered the United States.

* * *

25. . . . [T]here is no dispute that Mother's attorney . . . in Germany spoke English.

26. . . . [A] custody determination was made by the Court in Germany from a proceeding that was initiated in November of 2023 by Mother.

* * *

30. The Court does not find Mother to be credible regarding her lack of communication or knowledge regarding her attorney, the steps she was taking to address her concerns and legal issues and leaving Germany, and the pending legal proceedings filed in Germany.

31. The Court finds if Mother was truthful with her testimony, she was negligent in not maintaining communication with the Courts in Germany and/or her attorney that she retained in Germany.

* * *

34. Mother cannot receive any benefit from burying her head in the sand, not requesting information and not acting to be informed about the German legal proceedings.

* * *

40. Mother alleges she became aware of the German [Custody] Order when she received it as Exhibit B to the [Father]'s verified Motion to Enforce Foreign Custody Order and for Emergency

> Return of The Child to [Father] filed in the Indiana [Court] on April 23, 2024.
>
> * * *
>
> 43. The Court finds Mother's claims regarding her attorney and the legal process in Germany disingenuous.

*Appellant's Appendix* at 111-13. The Indiana Court determined that Germany is Child's home state under the UCCJA, that Germany "has exercised jurisdiction and entered orders regarding [Child]," and that Indiana does not have jurisdiction regarding Child. *Id*. at 114. Finding that, pursuant to the UCCJA, it was "bound to enforce" the German Custody Order, the Indiana Court granted Father's motions and ordered the parties to work together to return Child to Germany to Father's care to comply with the German Court's "valid and binding custody determination[.]"[4] *Id*. at 115. Mother now appeals.

## Discussion & Decision

[13] Mother asserts that the trial court erred in determining that it lacked jurisdiction to make a custody determination under the UCCJA and asks us to reverse the Indiana Court's registration and enforcement of the German Custody Order. In reaching its decision, the Indiana Court entered special findings of fact and conclusions pursuant to Ind. Trial Rule 52(A). Our review of such is two-tiered.

---

[4] Mother sought a stay of execution in the trial court and this court, which were denied. According to Father, Child was returned to Father's care in Germany on January 13, 2025.

*Coulibaly v. Stevance*, 85 N.E.3d 911, 915 (Ind. Ct. App. 2017). First, we consider whether the evidence supports the findings, and second, whether the findings support the judgment. *Id*. The trial court's findings and conclusions will be set aside only if they are clearly erroneous – that is, where a review of the record leaves us with a firm conviction that a mistake has been made. *Id*. at 915-16. In conducting our review, we will neither reweigh the evidence nor judge the credibility of witnesses. *Id*. at 916. Instead, we will consider only the evidence favorable to the trial court's judgment. *Id*. We review conclusions of law de novo. *Wilkinson v. Assante*, 107 N.E.3d 1074, 1078 (Ind. Ct. App. 2018).

[14] Where an interstate custody determination is at issue, the UCCJA, codified at Ind. Code Art. 31-21, governs. *Tamasy v. Kovacs*, 929 N.E.2d 820, 825 (Ind. Ct. App. 2010). Indiana adopted the UCCJA "to address important considerations, including: avoiding competition and conflict among courts of different jurisdictions in matters of child custody; promoting interstate cooperation in rendering custody decrees; and deterring abductions and other unilateral removals of children undertaken to obtain custody awards." *Novatny v. Novatny*, 872 N.E.2d 673, 678 (Ind. Ct. App. 2007). It provides a procedural framework to avoid having courts from different states or countries issuing contradictory child custody orders. *Matter of A.R.*, 110 N.E.3d 387, 398 (Ind. Ct. App. 2018). Under the UCCJA, an Indiana court has an affirmative duty to question its jurisdiction when it becomes aware of an interstate dimension in a child custody dispute. *Tamasy*, 929 N.E.2d at 826. The trial court must first

determine whether it has jurisdiction, and, if it does, whether to exercise that jurisdiction. *Id.*

[15]     The UCCJA provides that an Indiana court has jurisdiction to make an initial child custody determination only if one of the following applies:

> (1) Indiana is the home state of the child on the date of the commencement of the proceeding or was the home state of the child within six months before the commencement of the proceeding, and the child is absent from Indiana but a parent or person acting as a parent continues to live in Indiana.
>
> (2) A court of another state does not have jurisdiction under subdivision (1) or a court of the home state of the child has declined to exercise jurisdiction on the ground that Indiana is the more appropriate forum . . . , and:
>
>> (A) the child and the child's parents, . . .have a significant connection with Indiana other than mere physical presence; and
>>
>> (B) substantial evidence is available in Indiana concerning the child's care, protection, training, and personal relationships.
>
> (3) All courts having jurisdiction under subdivision (1) or (2) have declined to exercise jurisdiction on the ground that an Indiana court is the more appropriate forum to determine the custody of the child . . . .
>
> (4) No court of any other state would have jurisdiction under the criteria specified in subdivision (1), (2), or (3).

I.C. § 31-21-5-1. In turn, "home state" is defined as:

> the state in which a child lived with (1) a parent; or (2) a person acting as a parent; for at least six consecutive months immediately before the commencement of a child custody proceeding. In the case of a child less than six months of age, the term means the state in which the child lived since birth with a parent[.]

I.C. § 31-21-2-8. "[B]y definition, if the child has a 'home state' other than Indiana, then jurisdiction may not be assumed in Indiana unless the home state has declined its jurisdiction." *Novatny*, 872 N.E.2d at 680.

[16] Relevant here, "[a]n Indiana court shall treat a foreign country as if the foreign country were a state of the United States" for purposes of applying the jurisdictional provisions of the UCCJA. I.C. § 31-21-1-3(a). Further, "a child custody determination made in a foreign country under factual circumstances in substantial conformity with the jurisdictional standard of this article must be recognized and enforced under IC 31-21-6."[5] I.C. § 31-21-1-3(b).

[17] Here, in challenging the trial court's decision that it lacked jurisdiction, Mother asserts that Germany is not Child's home state. She argues that Child lived in

---

[5] I.C. § 31-21-6-2 provides, in part:

> (a) An Indiana court shall recognize and enforce a child custody determination of a court of another state if the court of another state exercised jurisdiction in substantial conformity with this article or the determination:
>
>> (1) was made under factual circumstances meeting the jurisdictional standards of this article; and
>>
>> (2) has not been modified in accordance with this article.

Germany "for only four months before the filing" – that is, from birth in July 2023 to Mother's filing on November 15, 2023 – but has continuously lived in Indiana since arriving with Mother on November 21, 2023. *Appellant's Brief* at 11. She argues, "In other words, under no interpretation of the record has [Child] lived in Germany either for six straight months or continuously from birth," as required by I.C. § 31-21-2-8. *Id.* at 14.

[18] Mother's argument is unpersuasive. I.C. § 31-21-2-8 provides that, in the case of a child less than six months of age, home state means the state in which the child lived since birth with a parent. Here, Child was less than six months of age when Mother commenced a custody proceeding in Germany. Child was born in and continuously lived in Germany for four months, until Mother unilaterally left with Child.

[19] Mother nevertheless urges that Child's ties to Germany "are minimal and based on temporary and tumultuous circumstances" and that Indiana, "where [Child] lived for most of her life," is Child's "habitual residence and home state." *Appellant's Brief* at 13. To the extent that Mother's argument is that Child's significant connections are to Indiana, the UCCJA's "significant connection" jurisdiction may be found to exist only if the child lacks a home state. *See* I.C.§ 31-21-5-l(a)(2) (stating that if a court does not have jurisdiction under the home-state section or has declined to exercise it, another state may exercise jurisdiction if it determines that the child and at least one of the parents "have a significant connection with" the state and "substantial evidence is available . . . concerning the child's care, protection, training, and personal relationships");

*see also Hays v. Hockett*, 94 N.E.3d 300, 308 (Ind. Ct. App. 2018) ("When the home-state test does not apply, the significant connection test . . . is used."), *trans. denied*. Because Germany satisfied the UCCJA's definition of home state, we do not reach the issue of whether jurisdiction exists in Indiana based on connections to this state.

[20] In sum, we find that Germany was Child's home state under the UCCJA, the German Court issued a temporary custody order in January 2024 following a hearing on Mother's November 2023 application for custody, Father continues to reside in Germany, and Germany has not declined to exercise jurisdiction. On this record and pursuant to the UCCJA, the Indiana Court's decision that it lacked jurisdiction was not clearly erroneous.

[21] Judgment affirmed.

Brown, J., concurs.

Tavitas, J., concurs with separate opinion.

ATTORNEYS FOR APPELLANT

Bryan L. Ciyou
Indianapolis, Indiana

Anne M. Lowe
Carmel, Indiana

ATTORNEYS FOR APPELLEE

Suzanne M. Wagner
Katherine L. Geist
Fort Wayne, Indiana

**Tavitas, Judge, concurring.**

[22] I concur with the majority that, under these circumstances, Germany is the Child's home state and Indiana does not have jurisdiction to make a custody determination. I write separately to emphasize the unfortunate circumstances in this case and the availability of temporary emergency jurisdiction in abuse situations.

[23] Mother alleged that Father abused her in Germany; she was hospitalized as a result of the alleged abuse; and Mother obtained a protection order against Father in Germany as a result. I note that Indiana Code Section 31-21-5-4 provides for temporary emergency jurisdiction in such circumstances and states:

> (a) An Indiana court has temporary emergency jurisdiction if the child is present in Indiana and:
>
> > (1) the child has been abandoned; or
> >
> > (2) it is necessary in an emergency to protect the child because:
> >
> > > (A) the child;
> > >
> > > (B) the child's sibling; or
> > >
> > > (C) the child's parent;

is subjected to or threatened with mistreatment or abuse.

(b) If:

  (1) there is no previous child custody determination that is entitled to be enforced under this article; and

  (2) a child custody proceeding has not been commenced in a court of a state having jurisdiction under sections 1 through 3 of this chapter;

a child custody determination made under this section remains in effect until an order is obtained from a court of a state having jurisdiction under sections 1 through 3 of this chapter.

(c) If a child custody proceeding has not been or is not commenced in a court of a state having jurisdiction under sections 1 through 3 of this chapter, a child custody determination made under this section becomes a final determination, and, if it so provides, Indiana becomes the home state of the child.

(d) If:

  (1) there is a previous child custody determination that is entitled to be enforced under this article; or

  (2) a child custody proceeding has been commenced in a court of a state having jurisdiction under sections 1 through 3 of this chapter;

an order issued by an Indiana court under this section must specify in the order a period that the court considers adequate to allow the person seeking an order to obtain an order from the state having jurisdiction under sections 1 through 3 of this chapter.

(e) The order issued in Indiana remains in effect until an order is obtained from the other state within the period specified or the period expires.

(f) An Indiana court that has been asked to make a child custody determination under this section, on being informed that:

  (1) a child custody proceeding has been commenced in; or

  (2) a child custody determination has been made by;

a court of a state having jurisdiction under sections 1 through 3 of this chapter, shall immediately communicate with the other court.

(g) An Indiana court that is exercising jurisdiction under sections 1 through 3 of this chapter, on being informed that:

  (1) a child custody proceeding has been commenced in; or

  (2) a child custody determination has been made by;

a court of another state under a statute similar to this section, shall immediately communicate with the court of the other state to resolve the emergency, protect the safety of the parties and the child, and determine a period for the duration of the temporary order.

[24] Although this statute was cited in Mother's initial Indiana petition and might have entitled Mother to relief, Mother did not mention this statute at the trial court's hearing on this matter and does not mention this statute on appeal. Accordingly, Mother waived the argument. I note, however, that the record does not indicate that the trial court complied with the statutory requirement to immediately communicate with the German court. This communication between the courts is imperative as it advances the best interests of the child at issue. Given Mother's waiver, however, I concur with the majority's affirmance of the trial court's order despite the apparent failure of the trial court to follow the statutory requirements.